1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**SOUTHERN DISTRICT OF CALIFORNIA**

10

11 | ABRAM RODRIQUEZ,

12 | Plaintiff,

13 | vs.

14 | INTERNATIONAL LONGSHORE AND
WAREHOUSE UNION LOCAL 29;

15 | INTERNATIONAL LONGSHORE AND
WAREHOUSE UNION; and PACIFIC

16 | MARITIME ASSOCIATION,

17 | Defendants.

**CASE NO. 08-CV-00433-H (BLM)**

**ORDER GRANTING DEFENDANTS ILWU & LOCAL 29'S MOTION FOR SUMMARY JUDGMENT**

18
19
20
21
22
23
24
25
26
27
28

On March 7, 2008, Plaintiff Abram Rodriquez initiated this action against Defendants International Longshore and Warehouse Union Local 29, International Longshore and Warehouse Union, and Pacific Maritime Association for violating his rights as a member of a labor organization.  (Doc. No. 1.)  On September 19, 2008, Plaintiff filed an amended complaint.  (Doc. No. 21.)  On July 13, 2009, Defendants International Longshore and Warehouse Union Local 29 ("Local 29") and International Longshore and Warehouse Union ("ILWU") filed a motion for summary judgment. (Doc. Nos. 41-42.) Plaintiff filed a response in opposition on August 3, 2009.  (Doc. No. 51.)  On August 10, 2009, Defendants Local 29 and ILWU filed a reply.  (Doc. No. 54.)  The Court held a hearing on the matter on August 17, 2009. Derek Anderson appeared on behalf of Plaintiff. Dennis Hayes and Robert Remar

08cv433

1   appeared on behalf of Local 29 and ILWU.

2       The Court, for the reasons set forth below, grants Defendant Local 29 and ILWU's

3   motion for summary judgment.

4                                **Background**

5       Plaintiff Abram Rodriguez brought this action against Defendants International

6   Longshore and Warehouse Union Local 29 ("Local 29") and International Longshore and

7   Warehouse Union ("ILWU") for: (1) violation of 29 U.S.C. §§ 412 and 529; (2) violation of

8   29 U.S.C. §§ 411 and 529; (3) violation of 29 U.S.C. §§ 411 and 412; (4) violation of 29

9   U.S.C. §§ 481 and 482; (5) breach of contract; (6) breach of covenant of good faith and fair

10  dealing; (7) tortious interference with economic relations; (8) discrimination based on age; (9)

11  retaliation in employment; and (10) breach of collective bargaining agreement. (Doc. No. 21,

12  First Amended Complaint ("FAC").)  Plaintiff's claims arise from his tenure and recall as

13  President of Local 29 and from his appointment to and removal from the super cargo dispatch

14  list.

15      Plaintiff is a marine clerk employed on the waterfront at the Port of San Diego, a former

16  Union Officer, and a registered member of Defendant Local 29. (FAC ¶¶ 4-5; Doc. No. 42,

17  Remar Decl. Ex. A, A. Rodriguez Depo 16:20-17:21.)  Local 29 is a collective bargaining

18  representative for longshore workers who work primarily in the Port of San Diego and acts as

19  the authorized agent of its members with respect to union elections, registration, hiring,

20  dispatch, and discipline of its members. (FAC ¶ 5.)  ILWU is the parent organization for all

21  longshore locals in California, Oregon, and Washington. (Id. ¶ 6.)  PMA acts as the payroll

22  agent and collective bargaining representative for the stevedoring companies, terminal

23  operators, and shipping companies that employ waterfront workers at ports in California,

24  Oregon, and Washington.  (Id. ¶ 7.)

25      The terms and conditions of longshore and marine clerk work in all ports on the Pacific

26  Coast are governed by a collective bargaining agreement ("CBA") between the ILWU and its

27  locals and PMA, on behalf of its member-companies.  The CBA consists of the Pacific Coast

28  Longshore Contract Document ("PCLCD"), which governs the terms and conditions of

employment for longshore workers employed by PMA member companies and the Pacific Coast Clerk's Contract Document ("PCCCD"), which governs the terms and conditions of employment for marine clerks employed by PMA member companies.  Together these documents comprise the Pacific Coast Longshore and Clerks Agreeement ("PCL&CA".)[1] (Doc. No. 42, Remar Decl. Ex. B, McEllrath Depo. 51:20-23, 52:9-12.)  When in their own membership governance, marine clerks follow the rules of Local 29's Constitution and bylaws. (Id. 52:13-16.)   The Joint Port Labor Relations Committee ("JPLRC") is a joint labor-management committee composed of representatives of the waterfront employers and the ILWU locals at that specific port.  Each JPLRC is responsible for administering the CBA at the local port level, which includes processing workers for registration, requiring workers to follow collectively bargained rules and procedures, and resolving grievances and employer complaints.   On the JPLRC, the employers are represented by the LRC representatives with PMA as the employer chair.  The Union is represented by a designated officer or representative to the respective JPLRC.

**1.  Election and Recall of Plaintiff as Local 29 President**

In June 2007, Plaintiff was elected president of Local 29 and assumed the office on July 1, 2007.  (FAC ¶ 9; Doc. No. 51 A. Rodriguez Decl. ¶ 1.)  Approximately two months after Plaintiff took office, several members complained at a Local 29 membership meeting that the local dispatch rules were not being followed.  (Doc. No. 42 Remar Decl. Ex. A, A. Rodriguez Depo. 39:1-40:12.)  The nature of the members' complaints was that workers were being permitted to take multiple shifts in a row, which reduced the work opportunity of other workers. (Id. 40:19-41:8.)  The membership at this meeting voted to enforce the 1987 dispatch rules. (Id. 44:23-45:3.)  The day following the meeting, Plaintiff informed Local 29 dispatcher Anthony Soniga to enforce the 1987 dispatch rules, which would stop the practice of triple backs and allow workers to take only two shifts in a row. (Id. 48:3-50:23.)   Disallowing workers to take more than two shifts in a row changed dispatch procedures that had been in

---

[1]Defendants cite to various sections of the PCL&CA throughout their papers, but have not submitted the document to the Court.

place for approximately ten years.  (Id. 41:19-42:5.)

At a November 5, 2007 JPLRC meeting, PMA sought Local 29's agreement to temporarily bring in 30 longshore workers and 10 foremen from the Port of Los Angeles/Long Beach, due to an expected increase in cargo volume.  (Id. 61:22-64:6, Ex. 4.)  Local 29 agreed to PMA's proposal and agreed that class A longshore travelers would be honored as such and that all other travelers would be considered volunteer travelers and dispatched after the ID board.  (Id., Ex. 4.)  On November 12, 2007, Plaintiff was confronted by members of Local 29's executive board who complained that the longshore workers registered outside the Port of San Diego were being rotated with San Diego Class A workers and dispatched ahead of San Diego Class B workers.  (Id. 73-76.)  Plaintiff testified that at this meeting Local 29 member Joe Vinole threatened him physically and that Vinole made similar threats in the following days.  (Id. 77-83.)  Plaintiff filed a union complaint regarding these incidents on November 25, 2007.  (Id., Ex. 5.)  On November 14, 2007, a special executive board meeting was called by the executive board members and the LRC committee regarding the rotation of the visitors and Plaintiff's failure to bring the matter before the executive board, the LRC committee and the members before the November 5, 2007 JPLRC meeting.  (Id. 151:13-152:5.)  Plaintiff testified that he stated at this meeting that everyone that was needed from the Local 29 was present at the November 5, 2007 JPLRC meeting and that all had agreed that the visitors would rotate with the locals for foremans and skilled jobs.  (Id. 152:9-153:12.)

At a membership meeting on December 11, 2007, Plaintiff was presented with a recall petition signed by 49 Local 29 members.  (Id. Ex. 6.)  Brian Whatley read the charges against Plaintiff from the recall petition and four or five members yelled at Plaintiff to vacate his chair as president and physically approached Plaintiff.  (Id. 96-101.)  Plaintiff refused to step down, tried to regain order of the meeting, but the meeting deteriorated into chaos.  (Id. 101-03.)  Plaintiff filed a union complaint on December 17, 2007, regarding the events of the December 11, 2007 meeting.  (Id. Ex. 5.)  Local 29 Vice President William Silva announced to the membership in a December 22, 2007 letter that Plaintiff would have an opportunity to present his case to the membership on January 8, 2008 and that the recall vote would occur on January 11, 2008. (Id. 187-88, Ex. 12.)  Plaintiff was given twenty minutes to address the membership,

he used all twenty minutes, and then was told to leave the meeting. (Id. 188:13-22.)  Plaintiff was interrupted mid-sentence and informed the officials that he was just getting started and needed to give his defense.  (Id. 189:2-25; Doc. No. 51, Mendoza Decl. ¶ 8, Villanueva Decl. ¶ 11, Luna Decl. ¶ 9.)  The recall election took place on January 11, 2008 and Plaintiff was recalled by a vote of 61 to 29.  (Doc. No. 42 Remar Decl. Ex. C, Whatley Depo. Ex.11.)

Plaintiff wrote to the President of ILWU, Robert McEllrath, on December 14, 2007, complaining about the recall petition and alleging various internal problems at Local 29. (Doc. No. 42, A. Rodriguez Depo. 129-30, Ex. 10.)  McEllrath responded to Plaintiff's letter by writing to the officers and executive board members of Local 29, requesting information regarding Plaintiff's accusations.   (Id. 186, Ex. 11.)   However, during McEllrath's investigation, it came to his attention that Plaintiff was believed to have a criminal conviction that prevented him from holding union office. (Id., Ex. 15.)

On June 27, 1994, Plaintiff was convicted under 18 U.S.C. §§ 371 and 1546 for conspiracy to make false statements in visa applications in the United States District Court for the Southern District of California. (Doc. No. 42, A. Rodriguez Depo. Ex. 27.) Plaintiff pled guilty to a charge of conspiring "to assist undocumented aliens in presenting and subscribing as true, false statements with respect to material facts on . . . Applications for Status as Special Immigrant Religious Workers."  (Id. Ex. 28.)  Plaintiff was sentenced to eight months in prison, beginning July 11, 1994, and one year of supervised release following the end of his prison term.  (Id. Ex. 27.)  He served four months in federal prison and an additional four months in a community confinement center. (Id. 13-16, Ex. 28.)  Plaintiff was released from federal custody in March 1995.  (Id. 18.)

After McEllrath directed Local 29 to advise him and Local 29 members on Local 29's position on Plaintiff's criminal conviction, and after Plaintiff's counsel refused to confirm or deny Plaintiff's conviction, Local 29 and ILWU concluded that Plaintiff was convicted of a felony in 1994, sentenced to confinement until March1995, and was therefore ineligible to serve in union office when he was elected in 2007.  (Id. Exs. 15 & 16; Remar Decl. ¶ 5, Ex. D; McEllrath Depo. 117-20.)  ILWU therefore ceased to investigate Plaintiff's allegations regarding the recall election because McEllrath determined Plaintiff was in violation of § 504

of the Labor-Management Reporting and Disclosure Act, 29 U.S.C. § 504.[2]  (Id., McEllrath Depo. 117-20.)

## 2. Appointment and Removal of Plaintiff from the Super Cargo Dispatch List

On June 27, 2007, Local 29 made a request to the Joint Clerks' LRC that the three most senior marine clerks in Local 29 be given super cargo status and added to the super cargo list. (Doc. No. 42, A. Rodriguez Depo. 268:1-10; Doc. No. 51, Anderson Decl. Ex. A, V. Rodriguez Depo. 40-41, Ex. B, Peterson Depo. 39.)  A marine clerk with super cargo status gets priority dispatch for super cargo jobs and, if no super cargo jobs are available, those with super cargo status get first choice in dispatch for any remaining clerk jobs.  (Doc. No. 42, A. Rodriguez Depo., Ex. 1.)  Vernon Rodriguez, Plaintiff's brother, was the only Local 29 representative present at the meeting and the was the Union member who made the request on behalf of Local 29.  (Id., A. Rodriguez Depo. 206:4-207:13, Ex. 18; Doc. No. 51, Peterson Depo. 39.)  No action was taken at that time on the request, pending additional information from the Union regarding the three individuals the Union wanted to be added to the super cargo list.  (Id., Peterson Depo. 53-54.)

Plaintiff was elected president of Local 29 in June 2007, assumed the office on July 1, 2009, and as such become an authorized Union representative to the respective JPLRC meetings held in San Diego.  (FAC ¶ 9.)  In the months following Local 29's initial request to add three marine clerks to the super cargo list,  PMA investigated and found no past minutes of any Joint Clerks' LRC or any personnel information concerning the method that Local 29 historically used to add super cargoes.  (Doc. No. 51, Peterson Depo. 53-54.)

At the September 26, 2007 Joint Clerks' LRC meeting, Plaintiff and Vernon Rodriguez represented the Union and Tim Peterson represented PMA.  (Doc. No. 42, A. Rodriguez Depo. Ex. 19.)  Peterson testified that he had done research to try to determine the past practices of

---

[2]  Section 504 states that "no person . . . who has been convicted of . . . robbery, bribery, extortion, embezzlement, grand larceny, burglary, arson, violation of narcotics laws, murder, rape, assault with intent to kill assault which inflicts grievous bodily injury . . . shall serve or be permitted to serve– . . . (2) as an officer . . . of any labor organization . . . during or for the period of thirteen years after such conviction or after the end of such imprisonment, whichever is later." 29 U.S.C. § 504(a).

Local 29 and that he had not found anything to indicate that Local 29 had required additional super cargo training and testing in the past in order for a clerk to be added to the super cargo list. (Doc. No. 51, Peterson Depo. 53-54.) Because Peterson could determine no past practice, he brought with him payroll, training and work history information for each of the approximately 15 or 16 marine clerks in the unit in order for the Committee to determine which three clerks to add to the super cargo list according to seniority as determined by several factors. (Id., Peterson Depo. 57-61; Doc. No. 42, A. Rodriguez Depo. Ex. 19.) Based on the information, the Joint Clerks' LRC concluded that the three most senior clerks to be added to the super cargo list pursuant to Local 29's request were Plaintiff, Vernon Rodriguez, and Eddie Flores. (Id.; Doc. No. 51, Peterson Depo. 60-62.)

Noel Carlisle, another marine clerk, filed a union complaint against PMA and Tim Peterson in January 2008 alleging improper dispatch for allowing Plaintiff, Vernon Rodriguez and Eddie Flores to be dispatched as super cargoes without having completed the super cargo testing and training first. (Id., A. Rodriguez Decl. ¶ 16; Peterson Depo. 69-70; Doc. No. 42, A. Rodriguez Depo. Ex. 20.) The issue of this complaint was raised at the February and March 2008 Joint Clerks' LRC. At the March 19, 2008 Joint Clerks' LRC meeting, Local 29 demanded that the three clerks be removed from the super cargo list and presented two letters certifying that two of the current super cargo clerks had passed the super cargo examination prior to being given super cargo status. (Doc. No. 42, A. Rodriguez Depo. Ex. 21.) The employers, through PMA, initially took the position that the super cargo list should remain intact and that any future additions to the super cargo list would have to go to super cargo training and testing. (Doc. No. 51, Peterson Depo. 90-91.)

The employers and the Union eventually resolved the dispute with an agreement that the clerks currently on the super cargo list would remain on the list, but would be required to sign up for, take, and pass the upcoming super cargo training to remain on the list and that any clerks seeking super cargo status in the future would have to take and pass the training and test prior to being placed on the list. (Doc. No. 51, Peterson Depo. 95-96.) As a result of this agreement, a sign up sheet for June 2008 training was posted between May 7, 2008 and May 21, 2008 for any eligible clerks, including Plaintiff. (Id., Peterson Depo. 96-97; Doc. No. 42,

A. Rodriguez Depo. Ex. 21.)  It was also agreed that if any clerk then on the super cargo list failed to sign up for the training within this period, failed to complete the training after signing up, or failed to pass the super cargo test, he or she would be removed from the super cargo list. (Id., A. Rodriguez Depo. Ex. 21; Doc. No. 51, Peterson Depo. 103.)

Plaintiff did not sign up for the training and testing before the end of the posting on May 21, 2008.  (Id., Peterson Depo. 104; Doc. No. 42, A. Rodriguez Depo. Ex. 21.)  As a result, on May 22, 2008, a special Joint Clerks' LRC meeting was held, where the Union and PMA, acting through Tim Peterson, voted to remove Plaintiff from the super cargo list effective May 22, 2008.  (Id., A. Rodriguez Depo. Ex. 21; Doc. No. 51, Peterson Depo. 101-04.)   Plaintiff did not file a grievance under the PCLCD concerning his removal from the super cargo list. (Doc. No. 42,  A. Rodrguez Depo. 268:11-16.)

## Discussion

### I.      Summary Judgment - Legal Standard

Federal Rule of Civil Procedure 56 governs summary judgment.  Section (b) provides that "a party against whom relief is sought may move at any time, with or without supporting affidavits, for summary judgment on all or part of the claim." FED. R. CIV. P. 56(b).  A motion for summary judgment should not be granted unless the pleadings, affidavits and evidence on file present "no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). "Summary judgment should be granted where the evidence is such that it would require a directed verdict for the moving party." Anderson v. Liberty Lobby Inc., 477 U.S. 242, 250 (1986). Thus, "Rule 56(c) mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

### A.  Labor-Management Reporting and Disclosure Act Claims

Plaintiff's first, second, third, and fourth causes of action are brought pursuant to the Labor-Management Reporting and Disclosure Act ("LRMDA"). (FAC ¶¶ 8-40.) Defendants contend that Plaintiff's first through fourth causes of actions fail because Plaintiff's 1994 felony conviction prohibited him from lawfully serving in union office in the first place,

Plaintiff lacks standing to challenge the validity of a completed election, and the recall election was conducted in accordance with applicable law in the Unions' constitutions.

Plaintiff's first three causes of action allege violations of Title I of the LMRDA, which confers specific rights on labor union members.  (29 U.S.C. §§ 411-415.)  Section 101(a) of Title I guarantees union members equal rights and privileges, freedom of speech and assembly, the right to vote on due increases, protection from retaliation for initiating legal action, and due process for internal union discipline.  29 U.S.C. § 411(a)(1).  These guarantees may be qualified by reasonable rules and regulations in the organization's constitution and bylaws.  Id.  Section 102 provides a private right of action against the labor organization to enforce section 101.  29 U.S.C. § 412.

### 1.  Plaintiff's first cause of action

Plaintiff alleges a violation of 29 U.S.C. §§ 412 and 529 in his first cause of action. (FAC ¶¶ 8-24.)  In this claim, Plaintiff alleges that the recall petition was illegal and improper under the Union's Constitution and Bylaws and that he was threatened with physical violence if he did not give up his chair immediately.  (Id. ¶ 11.)  Plaintiff alleges that he was improperly disciplined on or about December 27, 2007 by the Union because of his implementation of dispatch rules and opposition to his recall when Defendants arbitrarily decided that Plaintiff not be dispatched in the work rotation as a super cargo clerk.  (Id. ¶ 13.)  Plaintiff also alleges in connection with this claim that he was inhibited from presenting a defense to his recall at the January 8, 2008 membership meeting.  (Id. ¶ 14.)  Plaintiff also alleges that the recall petition and vote were conducted improperly and that after the recall vote he continued to be threatened by union members.  (Id. ¶¶ 15, 19.)

Section 529 provides that, "[i]t shall be unlawful for any labor organization, or any officer, agent, shop steward, or other representative of a labor organization, or any employee thereof to fine, suspend, expel, or otherwise discipline any of its members for exercising any right to which he is entitled under the provisions of this chapter."  Plaintiff's first cause of action seems to allege two purported incidents of suspension or discipline–the recall of Plaintiff as president of Local 29 and the December 27 failure to be put in the super cargo dispatch rotation.  The parties do not dispute that Plaintiff was subject to a recall petition and

recall election.  The only evidence presented concerning the December 27, 2007 failure to be dispatched as a super cargo is Plaintiff's declaration that on that date he was denied super cargo priority dispatch.  (Doc. No. 51, A. Rodriguez Decl. ¶ 15.)

The Court concludes that Defendants are entitled to summary judgment on Plaintiff's first cause of action.  There is no evidence to support a claim under § 529 that Plaintiff was subject to a recall petition and election because he exercised some right granted by the LMRDA or that the Union initiated such recall.  The evidence shows that a Union member, Robert Vinole, initiated the recall process with a petition based upon members' anger over Plaintiff's actions as Local 29 president.   (Doc. No. 42, A. Rodriguez Depo. Ex.6.) Furthermore, a recall election is not the sort of suspension or discipline covered by § 529, as Plaintiff was removed from union office, not fined, suspended, expelled or otherwise disciplined as a member.  See Finnegan v. Leu, 456 U.S. 431, 437-38 (1982) (holding that "otherwise discipline" does not include discharge from a position as an appointed union employee, such as a union officer).

While Plaintiff may have been informally disciplined on December 27, there is no evidence in the record to suggest that the Union formally disciplined Plaintiff for exercising his rights under the LMRDA by not giving him super cargo priority dispatch.  In using the phrase "otherwise discipline," "Congress did not intend to include all acts that deterred the exercise of rights protected under the LMRDA, but rather meant instead to denote only punishment authorized by the union as a collective entity to enforce its rules." Breininger v. Sheet Metal Workers Intern. Ass'n, 493 U.S. 67, 91 (1989).  Discipline in the statute refers to actions taken under the color of union authority and implies action taken according to "some sort of established disciplinary process rather than ad hoc retaliation by individual union officers." Id. at 91-92.  There is no evidence supporting an inference that Plaintiff was not given super cargo priority dispatch according to some official Union action or process, as Plaintiff presents no evidence on who took this action and how it was causally related to some protected right under the LMRDA.  Thus, Plaintiff has not made a showing sufficient to establish essential elements of his claim under § 529–that the alleged disciplinary actions were done in the name of the Union as an organizational entity and were done in response to

Plaintiff exercising a protected right under the LMRDA.

### 2. Plaintiff's Second Cause of Action

Plaintiff's second cause of action is brought pursuant to 29 U.S.C. §§ 411 and 529. (FAC ¶¶ 25-31.) Plaintiff alleges in this cause of action that Defendants violated §§ 411 and 529 in connection with the recall election process by failing to serve Plaintiff with specific charges, failing to give him sufficient time to prepare his defense, and denying him a full and fair recorded hearing contrary to 29 U.S.C. §411(a)(5)(A), (B), and (C). (Id. ¶ 29.)

Section 411(a)(5) provides that, "[n]o member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization or by any officer thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing." 29 U.S.C. § 411(a)(5). This section, however, "does not apply to removal or suspension from union office." Grand Lodge of Intern. Ass'n of Machinists v. King, 335 F.2d 340, 342-43 (9th Cir. 1964). Additionally, Plaintiff's second cause of action appears to take aim at the process by which the recall election was conducted, as Plaintiff alleges that the recall was contrary to the Union's Bylaws and Constitution. (FAC ¶ 33.) However, challenges to the validity of an election that has already been completed may only be brought under Title IV of the LMRDA. 29 U.S.C. § 483; Local 82 v. Crowley, 467 U.S. 526, 541 (1984). A union member who believes that the conduct of an election violated either the union's constitution or the statutory rules on union elections set for in the LRMDA § 401, 29 U.S.C. § 481, may only file a complaint with the Secretary of Labor. 29 U.S.C. § 482(a)(2). Accordingly, the Court concludes that Defendants are entitled to summary judgment on Plaintiff's second cause of action for a violation of § 411(a)(5), as Plaintiff's claim relates to his removal from union office through the recall process.

The Court concludes that Defendants are also entitled to summary judgment on Plaintiff's second cause of action for improper discipline in violation of § 529. As with § 411(a)(5), § 529 has been held to not apply to the discharge of an appointed union official. See Finnegan, 456 U.S. at 437-38.

/ / /

### 3.  Plaintiff's Third Cause of Action

Plaintiff's third cause of action is for violations of 29 U.S.C. §§ 411 and 412, alleging that the recall of Plaintiff was contrary to the Constitution and Bylaws of the Union.  (FAC ¶¶ 32-36.)  As discussed in relation to Plaintiff's second cause of action, § 411(a)(5)'s prohibition on fines, suspension, expulsion, or other discipline does not apply to the removal of a union official from office. Grand Lodge, 335 F.2d 342-43.  Additionally, the exclusive means to challenge a completed union election is to file a complaint with the Secretary of Labor.  29 U.S.C. § 482(a)(2).  Accordingly, the Court concludes that Defendants are entitled to summary judgment on Plaintiff's third cause of action.

Plaintiff argues in his opposition papers that he is not contesting the election results, but that he is claiming a violation of § 101(a)(1) for denial of equal rights at membership meetings held on November 14 and December 11, 2007.  (Doc. No. 51 at 7-8.)  Plaintiff contends that the physical and verbal threats aimed at him at these meetings denied him his right to participate in the meetings and present a defense to the charges against him.  (Id. at 7-9.)  Even under this theory, Defendants are entitled to summary judgment.  While Plaintiff has provided evidence that he was threatened at the November and December 2007 meetings, he has not provided evidence that the Union, rather than individual members, prevented him from participating in the meetings or from presenting a defense.  Plaintiff named five individuals who threatened him at the meetings and disrupted the December meeting to the point that as president, Plaintiff attempted to gain control and adjourn the meeting.  (Doc. No. 42, A. Rodriguez Depo. 94:10-101:6, Ex. 5.)  Plaintiff has not provided any evidence that the Union or an agent acting on behalf of the Union denied him equal rights at either of these meetings. 29 U.S.C. § 412.  In fact, at both of the alleged meetings, Plaintiff acted as an agent of the Union in his capacity as Local 29 president.  As the Supreme Court has stated, "it was the rank-and-file union members–not union officers or employees, as such–whom Congress sought to protect" in 29 U.S.C. § 411(a)(1) and (2).  Finnegan, 456 U.S. at 436-37.

### 4.  Plaintiff's Fourth Cause of Action

Plaintiff's fourth cause of action is for violations of 29 U.S.C. §§ 481 and 482, alleging that the actions of Local 29 in recalling Plaintiff were contrary to the Bylaws and Constitution

08cv433

of Local 29 and ILWU.  (FAC ¶¶ 37-40.)  Pursuant to § 482, a complaint challenging an election based upon a violation of § 481, including violation of the constitution or bylaws of the labor organization pertaining to the election and removal of officers, may be filed with the Secretary of Labor.  29 U.S.C. § 482(a).  The filing of a complaint with the Secretary is the exclusive remedy for challenging an election already conducted, and only the Secretary of Labor can bring suit.  29 U.S.C. § 483.  Accordingly, the Court grants Defendants' motion for summary judgment on Plaintiff's fourth cause of action.

Because the Court concludes that Defendants are entitled to summary judgment on Plaintiff's first through fourth causes of action on other grounds, the Court need not reach the issue of whether Plaintiff's 1994 criminal conviction independently precludes these claims.

**B. California Common Law Claims**

Plaintiff's fifth, sixth, and seventh causes of action for breach of contract, breach of covenant of good faith and fair dealing, and tortious interference with economic relations arise under California common law.  (FAC ¶¶ 41-47.)  Plaintiff alleges that Defendants breached their contractual obligations to Plaintiff by failing to comply with the provisions of the ILWU's Constitution and Bylaws, Local 29's Constitution and Bylaws, and the PCLCD.  (Id. ¶ 42.)  Plaintiff alleges that Defendants breached the covenant of good faith and fair dealing implied in those contracts.  (Id. ¶ 44.)  Plaintiff alleges that Defendants' breach of the contracts constitute a tortious interference with an economic relationship between Plaintiff and Defendants under the CBA.  (Id. ¶ 46.)  Defendants argue they are entitled to summary judgment on these causes of action because federal labor law preempts them.

Section 301(a) of the Labor-Management Relations Act ("LMRA"), 29 U.S.C. § 185, authorizes the federal courts to hear "[s]uits for violation of contracts between an employer and a labor organization . . .  or between any such labor organizations." 29 U.S.C. § 185(a). A union constitution and its bylaws is considered a contract between the union and its members, and a member or members may sue the union under § 301(a) for breach of those contracts. Wooddell v. International Bhd. of Elec. Workers, 502 U.S. 93 (1991); Ackley v. Western Conference of Teamsters, 958 F.2d 1463, 1466 (9th Cir. 1992). "[S]ection 301 preempts all state-law causes of action evaluation of which requires interpretation of a labor contract's

terms." Hayden v. Reickerd, 957 F.2d 1506, 1508-09 (9th Cir. 1991) (internal quotation omitted).  This preemption includes suits based on torts "if their evaluation is inextricably intertwined with consideration of the terms of a labor contract." Id. (internal quotations omitted).

The Court concludes that Plaintiff's fifth, sixth, and seventh causes of action are preempted by § 301.  Plaintiff's breach of contract action clearly requires the interpretation of a labor contract's terms, as Plaintiff alleges that Defendants breached the CBA and the relevant Union constitutions and bylaws.  Plaintiff's breach of the covenant of good faith and fair dealing action similarly requires the interpretation of a labor contract's terms, as it depends upon Plaintiff's claim for breach of the labor contracts.  See Newberry v. Pacific Racing Ass'n, 854 F.2d 1142, 1147 (9th Cir. 1988) (holding implied covenant of good faith and fair dealing claim preempted by § 301 because plaintiff was employed under CBA and cause of action required interpretation of specific language of the agreement's terms).  Plaintiff's claim for tortious interference with economic relations is also preempted, as the evaluation of Plaintiff's claim relies upon Defendants' alleged breach of the Union constitutions and bylaws and the resulting alleged interference with the economic relationship between Plaintiff and the employers under the CBA.  See Bale v. Gen. Tele. Co. of Cal., 795 F.2d 775, 780 (9th Cir. 1986) (holding state tort claims for fraud and negligent misrepresentation preempted by § 301 because they depended upon an analysis of the terms of an agreement made between the parties in a labor contract).  Therefore, this claim is inextricably intertwined with the consideration of the terms in the labor contracts.  Accordingly, the Court grants Defendants summary judgment on Plaintiff's fifth, sixth, and seventh causes of action.

Defendants also contend that Plaintiff's state law causes of action are preempted by the primary jurisdiction of the National Labor Relations Board under the doctrine established in San Diego Building Trades Council v. Garmon, 359 U.S. 236 (1959).  (Doc. No. 41 at 22.) Because the Court concludes they are preempted by § 301 and grants summary judgment on that basis, the Court need not evaluate whether Plaintiff's state law claims are also preempted under Garmon.

/ / /

## C. Age Discrimination

Plaintiff's eighth cause of action is for discrimination on the basis of age in violation of California's Fair Employment and Housing Act ("FEHA") and the federal Age Discrimination in Employment Act ("ADEA").  (FAC ¶¶ 48-57.)  Defendants argue that they are entitled to summary judgment on this cause of action because Plaintiff cannot establish a prima facie case of age discrimination.  (Doc. No. 41 at 23.)

Under both the ADEA and FEHA it is unlawful to discharge or otherwise discriminate against an employee over 40 because of his age. 29 U.S.C. §§ 623(a), 631(a); Cal. Gov't Code §§ 12926(b), 12940(a).  The age discrimination section of FEHA is closely related to its federal counterpart, the ADEA.  Accordingly, "California courts interpreting FEHA often look to federal cases interpreting [the ADEA]."  Nidds v. Schindler Elevator Corp., 113 F.3d 912, 916 (9th Cir. 1996).

### 1.  Disparate Treatment Theory

Plaintiff contends that it has established a prima facie case of disparate treatment. Courts apply the McDonnell Douglas burden-shifting analysis to both ADEA and FEHA disparate treatment claims.  Guz v. Bechtel Nat'l, Inc., 24 Cal.4th 317, 354 (2000); Wallis v. J.R. Simplot Co., 26 F.3d 885, 888-89 (9th Cir. 1994).  Under the three-stage burden shifting test established by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1993):

> [A] plaintiff must first establish a prima facie case of discrimination.  If the plaintiff established a prima facie case, the burden then shifts to the defendant to articulate a legitimate nondiscriminatory reason for its employment decision. Then, in order to prevail, the plaintiff must demonstrate that the employer's alleged reason for the adverse employment decision is a pretext for another motive which is discriminatory.

Wallis, 26 F.3d at 889.  "The burden of persuasion remains at all times with the plaintiff." Nidds, 113 F.3d at 916-17.

In order to establish a prima facie case of age discrimination, a plaintiff may rely on direct or circumstantial evidence.  Id. at 917.  Here, Plaintiff may make out a prima facie case

of disparate treatment through evidence showing: (1) that he was a member of a protected class [age 40-70]; (2) that he was performing his job in a satisfactory manner; (3) that he was discharged; and (4) that he was replaced by a substantially younger employee with equal or inferior qualifications. Wallis, 26 F.3d at 891. Although the prima facie burden is not onerous, the plaintiff at this stage still must produce probative evidence giving rise to a reasonable inference of discrimination. Nidds, 113 F.3d at 917.

The Court concludes that Plaintiff fails to make out a prima facie case of age discrimination by Defendants under a disparate treatment theory. Although not disputed by Defendants that Plaintiff is part of the protected class, Plaintiff has not produced any evidence that he was performing his job in a satisfactory manner or that he was replaced by a substantially younger employee with equal or inferior qualifications. Plaintiff has not produced probative evidence that he was performing his job in a satisfactory manner, as he was required to take job-specific training and pass a job-specific test in order to remain on the super cargo list, but failed to sign up for the training and testing within the required time period. (Doc. No. 42, A. Rodriguez Depo. 239-41, Ex. 21.)

Additionally, Plaintiff has not produced probative evidence that he was replaced, much less by a substantially younger employee with equal or inferior qualifications. When asked if anyone younger than Plaintiff was put on the super cargo list after he was taken off, Plaintiff testified, "Younger. No one else." (Id. 268:24-269:3.) The only indication in the record that another super cargo was added is Plaintiff's testimony that Noel Carlisle was placed on the super cargo list after attending a week of the super cargo training. (Id. 268-69.) This evidence fails to establish a prima facie case of age discrimination, as Plaintiff fails to make a sufficient showing on an essential element of his claim–that he was replaced by someone substantially younger with equal or inferior qualifications. There is no evidence concerning Noel Carlisle's age and the only evidence on Carlisle's qualifications is that she attended the super cargo training that Plaintiff did not sign up for or attend. There is no evidence to suggest that age was considered in the decisions to require the training and testing and remove Plaintiff when he failed to sign up for the required training and testing. (See id. 250:11-25 (testifying that no one from Local 29, PMA, or the dispatcher ever indicated that Plaintiff was removed from the

super cargo list because of his age).)  Accordingly, the Court grants Defendants' motion for summary judgment on Plaintiff's eighth cause of action for age discrimination under a disparate treatment theory.

### 2. Disparate Impact Theory

Plaintiff also argues in his opposition that he has established a prima facie case of age discrimination under a disparate impact theory. (Doc. No. 51 at 18-20.)  In a disparate impact case, a plaintiff must make a prima facie showing that an employment practice or criterion has a significant adverse impact on a protected classification.  See Rose v. Wells Fargo & Co., 902 F.2d 1417, 1424 (9th Cir. 1990); Antonio v. Wards Cove Packing Co., Inc., 810 F.2d 1477, 1482 (9th Cir. 1987).  In order to establish a prima facie case of disparate impact, the plaintiff must: (1) identify the specific employment practices or selection criteria being challenged; (2) show disparate impact; and (3) prove causation; "that is, the plaintiff must offer statistical evidence of a kind and degree sufficient to show that the practice in question has caused the exclusion of applicants for jobs or promotions because of their membership in a protected group."  Id. at 1424 (citation omitted).  Plaintiff has made no showing or presented any evidence that the required super cargo testing and training had a significant adverse impact on workers over 40 years old.  Plaintiff has offered no statistics on the age of those who have taken and passed the training and testing in relation to those eligible to take and pass the training nor that any statistical disparity was caused by the challenged practice.  See Watson v. Fort Worth Bank and Trust, 487 U.S. 977, 95 (1988) (stating that statistical disparities "must be sufficiently substantial that they raise such an inference of causation).  Plaintiff has made no showing of how the facially neutral policy of the Union to require the training and testing significantly and adversely impacts the protected classification of workers over 40. Accordingly, the Court grants Defendants' motion for summary judgment on Plaintiff's eighth cause of action under a disparate impact theory.

### D. Retaliation

Plaintiff's ninth cause of action is for retaliation.  (FAC ¶¶ 58-63.)  Plaintiff does not specify in his FAC whether he is stating a claim under state or federal law for retaliation.  As such, the Court will evaluate his cause of action under both state and federal law.  The ADEA

and FEHA prohibit employers from retaliating against employees who have made complaints or otherwise opposed age discrimination.  29 U.S.C. § 623(d); Cal. Gov't Code § 12940(h). Retaliation claims are subject to the same three-part <u>McDonnell Douglas</u> analysis as other discrimination claims.  <u>Manatt v. Bank of America</u>, 339 F.3d 792, 800 (9th Cir. 2003).

### 1. Prima Facie Case

To establish a prima facie case of retaliation, a plaintiff must prove that: (1) the plaintiff engaged in a protected activity; (2) the plaintiff suffered an adverse employment action; and (3) there was a causal link between the plaintiff' protected activity and the adverse employment action.  <u>Poland v. Chertoff</u>, 494 F.3d 1174, 1179-80 (9th Cir. 2007); <u>McRae v. Dept. of Corrections and Rehabilitation</u>, 142 Cal.App.4th 377, 386 (2006).  In order to establish a causal link between protected activity and an adverse employment action, a plaintiff must provide evidence showing that the plaintiff's employer was aware that the plaintiff had engaged in the protected activity.  <u>Morgan v. Regents of Univ. of Calif.</u>, 88 Cal.App. 4th 52, 70 (2000).

The Court concludes that Plaintiff fails to establish a prima facie case of retaliation. Plaintiff has produced no evidence that he engaged in a protected activity prior to his removal from the super cargo list on May 22, 2008, such as filing age discrimination complaints with Local 29 or ILWU or making any alleged additional verbal age discrimination complaints concerning attempts to take away his super cargo status based on his failure to take and pass super cargo training.  (<u>See</u> FAC ¶ 59.)  Plaintiff stated in his deposition that he never filed a grievance with the LRC and never filed a complaint with the Union regarding being taken off the super cargo list. (Doc. No. 42, A. Rodriguez Depo. 268:11-16.) Additionally, Plaintiff has produced no evidence that Local 29 or ILWU had knowledge of any of the alleged age discrimination complaints.  The only evidence that Plaintiff complained of being taken off the super cargo list is one email sent by Plaintiff's attorney in March 2008 stating that pursuing Carlisle's grievance would be considered discriminatory and retaliatory and two letters sent by Plaintiff's attorney after Plaintiff's removal on May 30, 2008 and September 2, 2008. (Doc. No. 51, Ex. G; Doc. No. 42, A. Rodriguez Depo.. Exs. 22 & 23.)  The March email does not mention age discrimination and refers to the "previously alleged harassment, discrimination,

and retaliation." (Doc. No. 51, Ex. G.)  The only evidence of allegations of discrimination, harassment, and retaliation prior to March 2008 concern Plaintiff's complaints about the recall election and members' threats against Plaintiff.  (See Doc. No. 51, Ex. C; Doc. No. 42, A. Rodrigez Depo. Ex. 13.)  Therefore, Plaintiff fails to establish that he engaged in a protected activity of filing age discrimination complaints that was causally related to the adverse employment action.  Accordingly, the Court grants Defendants' motion for summary judgment on Plaintiff's ninth cause of action, as Plaintiff fails to establish a prima facie case of retaliation.

**E. Breach of Collective Bargaining Agreement**

Plaintiff's tenth cause of action is for a breach of the collective bargaining agreement, embodied in the PCLCD, brought pursuant to § 301 of the Labor-Management Relations Act ("LMRA"), 29 U.S.C. § 185.  (FAC ¶¶ 64-70.)  Defendants argue they are entitled to summary judgment on this cause of action because Local 29 and ILWU did not breach their duties of fair representation, removal of Plaintiff from super cargo status did not violate the CBA, and Plaintiff failed to exhaust his remedies under the contract.  (Doc. No. 41 at 15-20.)

Plaintiff alleges in his tenth cause of action that Defendants ILWU and Local 29 breached their duty of fair representation to Plaintiff and that Defendants breached the PCLCD.  (FAC ¶¶ 67-68.)  Therefore, this suit is a hybrid fair representation/§ 301 suit, requiring proof that the Unions breached their duty of fair representation and that Plaintiff's removal from the super cargo list after he failed to sign up for and attend super cargo training and testing violated his rights under the PCLCD.  See Bliesner v. Commc'n Workers of Am., 464 F.3d 910, 913 (9th Cir. 2006) (citing DelCostello v. Int'l Bhd. of Teamsters, 462 U.S. 151, 164-65 (1983)).  District courts may resolve these two potentially dispositive questions in the order it prefers.  Id. at 914.

**1. Breach of PCLCD**

Plaintiff alleges that the denial of Plaintiff's seniority acquired through training, payroll, and work history and the blocking of Plaintiff from the super cargo dispatch rotation are breaches of the PCLCD.  (FAC ¶ 66.)  Defendants contend that PMA followed its contracts in adding and removing Plaintiff from the super cargo list and that Plaintiff has not and cannot

identify any portion of the PCLCD that has been breached by the determinations made by the JPLRC concerning the requirements and criteria for remaining on the super cargo list after the past practice of Local 29 was brought to light.  (Doc. No. 41 at 16-17.)  There is no dispute that PMA allowed Plaintiff to join the super cargo list in September 2007 pursuant to the agreement with Local 29 to add three marine clerks to the list based on seniority.  (Doc. No. 42, A. Rodriguez Depo. Ex. 19.)  Also, there is no dispute that PMA agreed with Local 29 to remove any clerk on the super cargo list if they failed to take and pass the super cargo training posted for sign up in May 2008.  (Id. Ex. 21.)  PMA removed Plaintiff after he  failed to sign up for the required testing and training.  (Id. Ex. 21; Doc. No. 51, Peterson Depo. 95-96, 103-04.)  Therefore, the Court concludes that PMA adhered to the contracts it made with Local 29 regarding the addition of clerks to the super cargo list and removal of clerks from the super cargo list.  Plaintiff has not submitted any evidence showing that PMA breached its contracts with Local 29 regarding the agreements on adding and removing clerks from the super cargo list, including evidence showing that the modification of requirements for inclusion on the super cargo list breached a provision of the collective bargaining agreement.

Plaintiff alleges in his FAC, without submitting any evidence to support this allegation, that, "the denial of plaintiff's seniority acquired through training, payroll, and work history and the blocking of plaintiff from the super cargo dispatch rotation are breaches of the PCLCD and deny plaintiff his right to equal treatment by defendants contrary to the PCLCD and the LMRA."  (FAC ¶ 66.)  However, "[e]mployee seniority rights are not 'vested' property rights which lie beyond the reach of subsequent union-employer negotiations conducted in the course of their evolving bargaining relationship."  Hass v. Darigold Dairy Products Co., 751 F.2d 1096, 1099 (9th Cir. 1985).  Plaintiff fails to point to or submit any provision of the PCLCD that was breached and fails to show how PMA breached its contracts by negotiating with Local 29 regarding who may attain super cargo status in the course of their evolving bargaining relationship.  (See Doc. No. 51, Peterson Depo. 91, 104.)   Plaintiff offers no argument concerning the breach of the CBA in his opposition papers.  (Doc. No. 51.)

### 2. Plaintiff's Exhaustion of Contractual Remedies

Additionally, Defendants contend that Plaintiff failed to exhaust his contractual

remedies for contesting his removal from the super cargo list. (Doc. No. 41 at 17.) As a general rule, individuals working under a collective bargaining agreement must first exhaust contractual grievance procedures before bringing an action for breach of that agreement. Carr v. Pacific Maritime Ass'n, 904 F.2d 1313, 1317 (9th Cir. 1990). "Failure to utilize the grievance procedures, or to invoke them in a timely manner, bars grievants from pursuing remedies in court. [internal citations omitted]. At a minimum, therefore, members of the bargaining unit must first turn to the grievance procedures for a remedy." Id. (citation omitted).

The Court concludes that Plaintiff has not made a sufficient showing that he exhausted his contractual remedies. Plaintiff argues that his attorney filed a grievance that was not answered and that a grievance was not required because it would have been futile. (Doc. No. 51 at 13-14.) Although an employee must attempt to exhaust exclusive grievance and arbitration procedures of the CBA, an employee may be excused from exhausting contractual remedial procedures when the conduct of the employer amounts to a repudiation of those procedures or if the union has the sole power under the contract to invoke the higher stages of the grievance procedure, such that the employee has been prevented from exhausting his contractual remedies by the union's wrongful refusal to process the grievance. Vaca v. Sipes, 386 U.S. 171, 185 (1967). "[T]he wrongfully discharged employee may bring an action against his employer in the face of a defense based upon the failure to exhaust contractual remedies, provided the employee can prove that the union as bargaining agent breached its duty of fair representation in its handling of the employee's grievance." Id. at 186.

Plaintiff stated in his deposition that he never filed a grievance with the LRC and never filed a complaint with the Union regarding being taken off the super cargo dispatch list. (Doc. No. 42, A. Rodriguez Depo. 268:11-16.) Plaintiff has not submitted any evidence that he did exhaust his contractual remedies for the alleged age discrimination and retaliation by Defendants. The letter sent by Plaintiff's attorney on May 30, 2008 is not a union grievance and does not state that it is acting as such. (Doc. No. 42, A. Rodriguez Depo. Ex. 22.) The letter sent by Plaintiff's attorney on September 2, 2008 references complaints made by Plaintiff to members and officers of Local 29 and representatives of PMA regarding Plaintiff's removal from the super cargo list. (Id. Ex. 23.) However, Plaintiff testified that he never filed a Union

complaint.  (<u>Id.</u> 268:11-16.)  Plaintiff has not provided the Court with any evidence that these attorney letters fit within the CBA's grievance procedures.   Tim Peterson, PMA's representative at the JPLRC when Plaintiff was added to and removed from the super cargo list, testified that, "our procedures aren't to have lawyers send letters to our JPLRC.  We don't respond to letters from lawyers. . . . [W]e have complaints, we have employer complaints and Union complaints that our JPLRC adjudicates."  (Doc. No. 51, Peterson Depo. 109:3-12.)  Thus, the only evidence of the proper procedure to use to file a grievance with the JPLRC is to use a Union complaint.  Plaintiff was aware of this procedure, as shown by his Union complaints in November and December of 2007 regarding the threats made against him.  (Doc. No. 51, A. Rodriguez Depo. Ex. 5.)  Accordingly, the Court concludes that Plaintiff fails to sufficiently show that he exhausted his contractual remedies or why he should be excused from such exhaustion.

### 3.  Breach of Duty of Fair Representation

A union's duty of fair representation prohibits discriminatory and bad faith conduct while protecting unions' "discretion to act in what they perceive to be their members' best interests."  <u>Galindo v. Stoody</u>, 793 F.2d 1502, 1514 (9th Cir. 1986).  "To establish a breach of a union's duty of fair representation, an employee most show that the union's conduct was 'arbitrary, discriminatory, or in bad faith.'"  <u>Id.</u> at 1513 (<u>quoting Vaca</u>, 386 U.S. at 190).  "In the grievance context, this standard prohibits a union from ignoring a meritorious grievance or processing that grievance perfunctorily. [citation omitted]. A union, however, need not process a meritless grievance."  <u>Id.</u> at 1513 (citation omitted).   "Because the union must balance many collective and individual interests when it decides whether and to what extent to pursue a particular grievance, courts should accord substantial deference to the union's decisions."  <u>Dutristic v. Caterpillar Tractor Co.</u>, 749 F.2d 1270, 1273 (9th Cir.1983).

From the face of Plaintiff's FAC, it is unclear on what grounds he alleges that Defendants breached their duty of fair representation.  (<u>See</u> FAC ¶ 67.)  However, Plaintiff argues in his opposition that Defendants breached their duty of fair representation by pursuing Noel Carlisle's late grievance and that the Defendants' actions in requiring training and testing did not benefit the collective interest.  (Doc. No. 51 at 12-13.)  The Court concludes that

Plaintiff's claim of breach of duty of fair representation based on the Defendants' processing of Carlisle's grievance fails. "[A] local union's reliance on precendant [is] not a discriminatory act and [does] not constitute bad faith." Stevens v. Moore Business Forms, Inc., 18 F.3d 1443, 1448 (9th Cir. 1994). The evidence offered shows that Carlisle's grievance concerning how Plaintiff, his brother, and another marine clerk were added to the super cargo list in September 2007 was meritorious. The JPLRC was presented with evidence that those on the super cargo list prior to the addition of Plaintiff were required to take super cargo training and pass a super cargo test. (Doc. No. 42, A. Rodriguez Depo. Ex. 21.) Thus the Union had a duty to investigate and process the meritorious grievance, even if filed late. See Galindo, 793 F.2d at 1513; see also Dutristic., 749 F.2d at 1274 (holding arbitrator's dismissal of grievance as untimely could constitute breach of union's duty).

In processing the grievance in the JPLRC meetings, the Union and PMA agreed that any member currently on the super cargo list or any clerk who sought addition to the list must complete training and testing, as was the past practice in Local 29. (Doc. No. 42, A. Rodriguez Depo. Ex. 21.) Therefore, the Union's agreements concerning super cargo status were made according to established precedent and were not discriminatory or done in bad faith. The evidence shows that Plaintiff had the same opportunity as other members to be placed on the super cargo list, but failed to complete the training and testing. Plaintiff fails to show how he was treated in a discriminatory manner. See Amalgamated Ass'n of St. Elec. & Motor Coach Employees of Am. v. Lockridge, 403 U.S. 274, 301 (1971) (noting to establish union's judgment was discriminatory, there needs to be "substantial evidence of discrimination that is intentional, severe, and unrelated to legitimate union objectives"). Plaintiff also does not show how the Union's actions were an improper exercise of its discretion "to make such concessions and accept such advantages as, in light of all relevant considerations, they believe will best serve the interests of the parties represented." Ford Motor Co. v. Huffman, 345 U.S. 330, 335 (1953).

Plaintiff also argues that Defendants breached their duty of fair representation in their alleged actions of age discrimination and retaliation. (Doc. No. 51 at 12-13.) Plaintiff has failed to make a prima facie showing of age discrimination and retaliation. Therefore, he has

not made a showing sufficient to establish a breach of the duty of fair representation under a theory of age discrimination and retaliation.

The Court grants Defendants' motion for summary judgment on Plaintiff's hybrid duty of fair representation/§ 301 tenth cause of action, as Plaintiff has produced no evidence showing the CBA was breached, that he exhausted his contractual remedies, and that the Union breached its duty of fair representation.

### Conclusion

For the reasons set forth above, the Court GRANTS Defendant Local 29 and ILWU's motion for summary judgment on all causes of action.

**IT IS SO ORDERED.**

DATED: August 18, 2009

MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT

08cv433